THE DELAWARE AND HUDSON CANAL COMPANY

*v.*

MICHAEL MITCHELL.

*Opinion filed October 24, 1904.*

TRIAL—*what must be assumed by court on motion to direct verdict.* On motion to direct a verdict for defendant in an action for breach of contract, the court is bound to assume not only that a contract was made, but that it was the contract testified to by the plaintiff and not the one which defendant's witnesses said he offered to make.

APPEAL from the Appellate Court for the First District;— heard in that court on appeal from the Circuit Court of Cook county; the Hon. JOHN GIBBONS, Judge, presiding.

ULLMANN & HACKER, for appellant.

C. W. GREENFIELD, for appellee.

Mr. JUSTICE CARTWRIGHT delivered the opinion of the court:

Appellee brought this suit in the circuit court of Cook county, against appellant, to recover damages for the refusal to deliver coal under an alleged contract for the sale to him of 2000 tons of coal at certain fixed prices. Appellant

pleaded the general issue, and on the trial there was a verdict for appellee for $2147.22. Judgment was entered on the verdict, and on appeal to the Appellate Court for the First District the judgment was affirmed after a *remittitur* by appellee of $14.06. Appellant has brought the record here by a further appeal from the judgment of the Appellate Court.

Following the course of the argument of appellant's counsel, the first question is whether the trial court erred in modifying an instruction. The defendant was a wholesale dealer in anthracite coal in Chicago and the plaintiff was a retail dealer in that city, not having any coal yard but purchasing from wholesale dealers and hauling direct to his customers from time to time, as he received orders for coal. The witnesses on both sides agreed that there were two interviews between the plaintiff and the sales agent of the defendant with a view to a contract for the purchase of coal by the plaintiff. Plaintiff testified that at the second interview, about July 12, 1895, a contract was made by which defendant was to sell to him 2000 tons of coal at $4.10 per ton for large egg or grate coal, and $4.25 for small egg, stove and chestnut, up to January 1, 1896, and twenty-five cents per ton additional after that date. The testimony for the defendant was that no such contract was ever entered into; that prices were quoted at the first interview by defendant's agent to plaintiff upon condition that he should purchase from defendant his entire season's supply; that at the second interview plaintiff stated he would contract for one-half of the requirements of his business up to May 1, 1896, which he assumed would be about 2000 tons; that the agent then learned from plaintiff that he was under obligations to another coal company to which he was indebted $3500 for coal purchased the preceding season, and that in view of that indebtedness and his financial condition the agent declined to enter into any contract. After the alleged contract plaintiff hauled a few tons of coal from defendant's yards and paid for it. On October 1, 1895, his teams hauled 14 tons, and on the morning of October 2, the manager

learning that fact and knowing that plaintiff had a mortgage on his personal property for $2000, ordered the deliveries stopped. There had been considerable advance in the price of coal at that time and there were further advances afterward, and plaintiff purchased coal from time to time, as needed, at the advanced prices.

The instruction presented by defendant and modified, stated that if there was a well known and universal custom in the coal trade at Chicago that made it the duty of a purchaser of coal for his business to begin during the season to take the coal in substantially equal monthly installments, and the plaintiff failed to do so, the defendant was not bound to deliver coal under the alleged contract and the plaintiff could not recover. The court added: "Unless the jury believe, from a preponderance of the evidence, that there was a specific contract between the parties on the subject, and that such contract, if any, was different from such custom, if any. What the facts are you must determine from the evidence introduced before you in this case." The ground upon which it is said the modification was erroneous is, that there was no specific contract on the question of delivery. The court ought to have refused the instruction because there was no evidence of any custom to take coal in substantially equal monthly installments. There was evidence that if a retail dealer made a contract for a season's supply, or a share of it, for his business, it was the custom to begin to haul in accordance with his agreement, or, in other words, to keep his contract. If he contracted for such coal as his business would require, he would be expected to draw the coal in proportion to the requirements of his business from time to time, based on the demand, and would not be required to haul as much during the summer months as later, when the coal business set in. Plaintiff testified that he bargained for the specific amount of coal at any time to suit his convenience, and there was sufficient evidence on which to base the modification. The instruction, even as given, was more favorable to defendant than the evidence warranted.

The second proposition of counsel is, that it was necessary for the plaintiff to prove that he was ready, willing and able to receive and pay for the coal, and that the evidence did not sustain the averments of the declaration in that respect. The court instructed the jury, at the request of defendant, that where no time of payment was specified, as in this case, it was the duty of the plaintiff to pay for the coal as received, and if they believed he did not pay for the coal received, or offer to pay for it as received, they should find for the defendant. It is not claimed that any instruction offered on that subject was refused or that there was any erroneous ruling, and we do not review decisions of the Appellate Court on questions of fact.

The next point made is, that the verdict was contrary to the law because it was contrary to two instructions given to the jury. The first of these instructions was to the effect that when the defendant refused to deliver coal, about October 1, it was the duty of the plaintiff to go into the market and buy the coal at the best price he could, and failing to do so he could not recover from the defendant the difference between the contract price and the market price at the time of such refusal. The second told the jury that if it was reasonably practicable for the plaintiff to have made a contract at the time of the refusal of defendant for the delivery of the coal remaining undelivered, it was his duty to do so, and failing in that he could not recover for more than the difference between the market price of coal on the day the contract was repudiated and the contract price.

It is evident that the jury disregarded the first instruction, but it does not follow that the verdict was contrary to the law. That instruction was not the law as applied to the theory of either party or any evidence in the case. In any possible view of the alleged contract, the coal was to be delivered either as required in plaintiff's business or as called for by him during a considerable period of time. He had no coal yard, and it was understood that the coal was to be hauled to his customers. He was not bound to go into the

market, on refusal to deliver coal then needed, and buy the whole amount of coal which he did not require or want. There had been a considerable advance in the price of coal when defendant refused to deliver coal, and the second instruction would have required plaintiff to go into the market and make a contract at that time by which he would take all risks of subsequent lower prices and give the defendant the benefit in case there should be a subsequent advance. But the question whether that instruction was correct is not now involved and is not decided. One of defendant's witnesses testified that coal was scarce at that time and it might not have been possible for plaintiff to have made a new contract for future delivery, and under the evidence the question was one of fact.

The last proposition of counsel is, that plaintiff was in default and the court should have directed a verdict for the defendant, as requested, for that reason. It is said that if we assume that any contract was made, the contract was for one-half of plaintiff's requirements in his business up to 2000 tons; that it was his duty to take one-half of the coal required in his business from day to day, but that he did not do so and for nearly three months bought practically all of his coal from other dealers, the quantity taken from defendant being less than 17 tons and that purchased from other dealers being 1467 tons. It is true that he took but little coal from the defendant up to October 1, when the price had advanced; but on the motion to direct a verdict the court was not only bound to assume that a contract was made, but also that it was the contract testified to by the plaintiff and not the one which defendant's witnesses said he offered to make. The contract which he testified to was not for one-half of his requirements, but for the specific amount of 2000 tons, which he could take at any time before January 1, 1896. If that was the contract there was no error in denying the motion.

The judgment of the Appellate Court is affirmed.

*Judgment affirmed.*